CODY R. LEJEUNE (CSB No. 249242)
cody@lejeunelawfirm.com
STEVEN M. BENSON (CSB No. 249225)
steven@lejeunelawfirm.com
**LEJEUNE LAW, P.C.**
402 West Broadway, Suite 400
San Diego, CA 92101
Telephone: (985) 713-4964

Attorney for Plaintiff,
SAFETY MANAGEMENT AND RELATED TRAINING, INC. (D/B/A SMART SAFETY GROUP)

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAFETY MANAGEMENT AND RELATED TRAINING, INC. (D/B/A SMART SAFETY GROUP), a California Corporation, <br><br> Plaintiff, <br><br> v. <br><br> SMART PROFITABILITY SOLUTIONS, LLC, a Delaware Limited Liability Company; SAFETY AND COMPLIANCE HOLDINGS, LLC, a Louisiana Limited Liability Company; CARR'S HILL PARTNERS, LLC, a Louisiana Limited Liability Company; PALA GROUP, INC., a Delaware corporation; SOLOMON GROUP PRODUCTIONS, LLC, a Louisiana Limited Liability Company and DOES 1- 50, inclusive, <br><br> Defendants. | Case No.: **'25 CV 2625 BAS MMP** <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> **JURY TRIAL DEMANDED** |

1

Plaintiff, SAFETY MANAGEMENT AND RELATED TRAINING, INC. (D/B/A SMART SAFETY GROUP) (hereafter "SSG" or "Plaintiff"), for its causes of action against defendants herein, complains and alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.     The claims herein arise as a result Defendants' unauthorized use of Plaintiff Smart Safety Group's ("Plaintiff" or "SSG") trademarks and logos.

2.     In this action, among other relief requested as detailed below, SSG seeks a declaratory judgment that Defendants must immediately cease the use of SSG's trademark and logo due to their trademark infringement via unauthorized use of SSG's trademark and logo.

3.     SSG, www.smartsafetygroup.com, is a reputable safety program management company that has used the Smart Safety Group trademark and logo ("Marks") below in commerce since at least April 1, 2005:



4.     Defendant Smart Profitability Solutions LLC ("Smart Profitability"), and all Defendants, have infringed SSG's Marks and passed the Marks off as their own causing confusion in the marketplace regarding the origin of the Marks.

5.     On its website, www.smartsafetygulfcoast.com, Smart Profitability advertises that it has offices and jobsites nationwide wherein they and their customers infringe the Marks.



6.     Defendant Smart Profitability has also granted sublicenses to its customers allowing them to use SSG's Marks without SSG's permission or consent.

7.     For instance, Solomon Group Productions ("Solomon"), a Smart Profitability customer, distributes Employee Incident Reports, in addition to numerous additional documents and forms, that contain SSG's Marks to individuals when an accident or injury occurs under Solomon's direction.

8.     On January 7, 2024, Solmon organized an event, and an individual was injured at the event. Solmon provided an Employee Incident Report form to the individual that contained the SSG Marks, and the injured individual filed a personal injury lawsuit in Texas and erroneously named SSG as a defendant – not Smart Profitability. *See Percy Lidback v. Harris County-Houston Sports Authority,* Case No. 2025-04271, District Court, Harris County, Texas (2025) (the "Lidback Lawsuit").

9.    The Solomon incident and resulting Lidback Lawsuit against SSG is just one example of Smart Profitability and its customers infringing SSG's Marks, causing confusion in the marketplace, and Defendants' passing SSG's Marks off as their own.

10.    Defendants' infringement of the SSG Marks stems from a Consulting Agreement ("Agreement") entered into by SSG, Smart Profitability and Pala Group on or about November 30, 2011 whereby SSG granted a license to Smart Profitability to use its Marks in exchange for several payments to be made by Smart Profitability to SSG. The Agreement is attached hereto as Exhibit 1.

11.    However, Smart Profitability materially breached the Agreement because it failed to make payments significant payments to SSG as set forth in the Agreement

12.    As a result, Smart Profitability does not have a license to use SSG's Marks, and Defendants do not have the right to use the Marks.

13.    Smart Profitability further infringes on SSG's Marks by allowing its customers, like Solomon, and other third parties to use the Marks in violation of the Agreement and without permission of SSG.

## THE PARTIES, JURISDICTION AND VENUE

14.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.    SSG is a citizen of the State of California.

16.    Smart Profitability is a limited liability company organized under the laws of the State of Delaware with its principal place at 1640 Powers Ferry Road, Building 2, Suite 300, Marietta, GA 30067.

17.    For purposes of diversity, Smart Profitability's citizenship is based on the citizenship of its members, which Plaintiff believes is Louisiana. Smart Profitability has office locations nationwide, including at 16347 Old Hammond Highway, Baton Rouge, LA 70816.

18.     None of the members of Smart Profitability are citizens of the same state as SSG and there is complete diversity of citizenship between parties to this suit.

19.     Safety and Compliance Holdings, LLC is a limited liability company organized under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana.

20.     For purposes of diversity, Safety and Compliance Holdings, LLC's citizenship is based on the citizenship of its members, which Plaintiff believes is Louisiana.

21.     None of the members of Safety and Compliance Holdings, LLC is a citizen of the same state as SSG and there is complete diversity of citizenship between parties to this suit.

22.     Carr's Hill Partners, LLC ("Carr's Hill") is a limited liability company organized under the laws of the State of Louisiana with its principal place of business in Baton Rouge, Louisiana. For purposes of diversity, Carr's Hill's citizenship is based on the citizenship of its members, which Plaintiff believes is Louisiana. None of the members of Carr's Hill is a citizen of the same state as SSG and there is complete diversity of citizenship between parties to this suit.

23.     Pala Group, Inc. ("Pala Group") is a corporation incorporated in the state of Delaware with its principal place of business located at 16347 Old Hammond Hwy, Baton Rouge, Louisiana 70816.

24.     The amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

25.     The Court has personal jurisdiction over Defendants because all entities have engaged in business activities in using the trademarks at issue in, and directed to, the State of California and have committed tortious acts within the state.

26.     All Defendants have purposefully availed themselves of the opportunity to conduct commercial activities in this forum by using the trademarks in commerce in California and within the District, and this Complaint arises out of those activities.

27.     Defendants' website (smartsafetygulfcoast.com) shows that Defendants perform work at jobsites in California.

28.     Further, the Agreement was signed by all parties in San Diego, California at SSG's office, which is in this District, and the parties often conducted business together in this District.

29.     Venue is appropriate under 28 U.S.C. §§ 1391 and 1400 because a substantial part of the events giving rise to the claims for relief occurred in San Diego County, and Defendants' actions caused injury in San Diego County.

30.     Defendants Does 1 through 50 are sued herein by fictitious names for the reason that their true names are unknown to SSG. SSG will seek leave to amend this complaint to allege the true names and capacities of these Defendants when the same have been ascertained. SSG is informed and believes and based thereon alleges that these fictitiously named Defendants are responsible in some manner for the actions and damages alleged herein.

31.     SSG is further informed and believe and based thereon allege that Defendants at all times herein alleged were the agents, employees, servants, joint venturers and/or co-conspirators of each of the other remaining Defendants, and that in doing the things herein alleged were acting in the course and scope of such agency, employment, joint venture and/or conspiracy.

32.     SSG is informed and believes and on that basis alleges without limitation that all Defendants share a unity of interest and ownership, that all Defendants use SSG's Marks (and are therefore commingling this asset), that all Defendants have common ownership, management and employees, that all Defendants fail to observe the required corporate formalities necessary to keep them from being considered alter egos of one

another, that all Defendants use the same business location, that affiliate transactions conducted by, between an among all Defendants are not conducted at arm's length, and that not considering all Defendants to be alter egos of one another would result in an inequitable result to SSG in these proceedings.

33.    SSG is informed and believes and based thereon alleges that, at all times relevant hereto, a unity of interest has existed between Defendants such that any separateness between the Defendants has ceased and that it would sanction a fraud or promote an injustice if the separateness of the Defendants were recognized. SSG is informed and believes and based thereon alleges that Defendants are successors in interest to a party liable to SSG because: [1] There is an express or implied agreement of assumption with respect to the assets of the seller (or transferor); [2] The transaction amounts to a consolidation or merger of the two entities; [3] The purchasing entity is a mere continuation of the seller (or transferor); or [4] The transfer of assets to the purchaser (or transferee) is for the fraudulent purpose of escaping liability for the debts of the seller (or transferor). SSG is informed and believes and based thereon alleges that, at all times relevant hereto, that certain of the Defendants were insolvent and/or rendered insolvent by the actions of other Defendants. SSG is informed and believes and based thereon alleges that, at all times relevant hereto, that certain of the Defendants were each active participants, for profit, in the common enterprise conducted through various other Defendants, using the same tangible and intangible assets, including SSG's Marks, equipment, employees, and goodwill. SSG is informed and believes and based thereon alleges that, at all times relevant hereto, that the entity Defendants have been used by the individual Defendants as subterfuges for illegal, fraudulent and/or otherwise wrongful transactions. SSG is informed and believes and based thereon alleges that, at all times relevant hereto, Defendants were mere shells and shams without sufficient or adequate capitalization, that the entity Defendants were conceived, intended, and utilized by the natural person Defendants, and each of them, as devices to avoid individual liability and

for the purpose of substituting financially insolvent business entities in the place of the natural person Defendants, and each of them, that other Defendants, and each of them, have failed to observe corporate formalities with respect to the activities of the entity Defendants, that other Defendants, and each of them, have used assets of the entity Defendants for personal use, that other Defendants, and each of them, have caused assets of the entity Defendants to be transferred to the other Defendants, and each of them, without adequate consideration, that other Defendants, and each of them, have caused the entity Defendants to pay excessive compensation to insiders at a time when the corporation was insolvent, that other Defendants, and each of them, have caused the entity Defendants to make distributions to members or shareholders at a time when the corporation was insolvent and that, during a state of entity insolvency, Defendants, and each of them, engaged in conduct that diverted, dissipated, or unduly risked assets of the entity Defendants that might otherwise have been used to satisfy creditors' claims. As a result of the preceding allegations, whether Defendants are the alter egos of one another, joint venturers, successors in interest, co-conspirators, or otherwise, Defendants are responsible for the debts, obligations and duties of one another. SSG is informed and believes and based thereon alleges that the damage claim of SSG is separate and distinct from any damage claim of the entirety of the class of the entity Defendants' creditors in that SSG was the specific and particularized target of Defendants' illegal, fraudulent and/or otherwise wrongful conduct.

## **FACTUAL BACKGROUND**

34.    In or around 2003, SSG provided services for Schilling Corporation, which later became known as Builders Tradesource.

35.    During the time that SSG conducted business with Schilling Corporation, Robert Turner acted as SSG's contact via his company Management Services & Associates LLC ("MSA"), and Vincent Hundley reported to Mr. Turner at Schilling Corporation concerning SSG's work for Schilling.

36.    Mr. Turner and MSA later ceased consulting for Schilling Corporation and then sought the assistance of Mr. Hundley in helping Mr. Turner's new company, Pala Group, to create a new a company which would perform services similar to the services performed by SSG in the Gulf Region.

37.    In 2011, SSG entered into the Agreement with Pala Group and Pala Group's subsidiary, Smart Profitability.

38.    The Agreement, entered into on November 30, 2011, set forth a number of categories whereby Smart Profitability would make payments to SSG in exchange for consulting services and a license to use SSG's Marks. *See* Ex. 1, at 4-6.

**Consulting Services Payments**

39.    The Agreement set forth, among other things, that SSG would provide consulting services for Smart Profitability. *See* Ex. 1, at 4-6.

40.    In exchange for receipt of the consulting services, Smart Profitability was to make payments to SSG. *See* Ex. 1, at 4-6.

41.    These payments were to be made to SSG on an hourly rate for consulting services. *See* Ex. 1, at 4-6.

42.    Smart Profitability made all hourly charges of SSG as was agreed upon in the agreement. *See* Ex. 1, at 4-6.

43.    The Consulting Period ended at the end of 2016. *See* Ex. 1, at 4-6.

44.    The Consultant, as defined and set forth in the Agreement, was Mr. Hundley of SSG. *See* Ex. 1, at 4-6.

45.    Mr. Hundley's consulting duties ended only at the end of the period in the Agreement and did not end or terminate for an event which amounted to "cause" or otherwise.

**Licensing Fees for Use of Marks and Bonus Payments to SSG**

46.     The Agreement also set forth a number of payment categories whereby Smart Profitability would make payments to SSG for its use of the Marks and when certain parameters were met. *See* Ex. 1, at 4-6.

47.     The Agreement categorized bonuses in three (3) ways, as detailed in Section 3 of the Agreement: (1) Startup Phase Bonus; (2) Growth Phase Bonus; and (3) Sales Bonus. *See* Ex. 1, at 4-6.

**Sales Bonus**

48.     Pursuant to the Agreement, Smart Profitability was required to make a "Sales Bonus" payments to SSG following any "controlling interest sale" of Smart Profitability as defined by the Agreement. *See* Ex. 1, at 4-6.

49.     A Controlling Interest Sale of Smart Profitability occurred on or around November 15, 2023, when Carr's Hill purchased Smart Profitability from Pala Group.

50.     Smart Profitability did not make the Sales Bonus payment to SSG following the controlling interest sale.

**Startup Phase Bonus**

51.     Pursuant to the Agreement, Smart Profitability was required to pay Startup Phase Bonuses to SSG in 2012 and 2013. *See* Ex. 1, at 4-6.

52.     Smart Profitability failed to make either Startup Phase Bonus payment to SSG.

**Growth Phase Bonus**

53.     Pursuant to the Agreement, Smart Profitability was required to pay Growth Phase Bonuses to SSG once the Growth Phase commenced in 2014. *See* Ex. 1, at 4-6.

54.     Smart Profitability was required to make payments to SSG "…(continuing) beyond the termination of Consulting Period, in perpetuity, so long as there is no Controlling Interest Sale, provided Consultant is not terminated for Cause." *See* Ex. 1, at 4-6.

55.    SSG received one Growth Phase bonus, in 2016, in the amount of $88,854.

56.    Otherwise, Smart Profitability failed to make the required Growth Phase Bonus payments to SSG for 2014, 2015, and 2017-2022, all of which are likely to exceed the 2016 payment of nearly $90,000.

**Trademark Infringement**

57.    Pursuant to the Agreement, in exchange for a $25,000 initial payment and other scheduled payments as detailed in the Agreement and above, SSG would grant a license to Smart Profitability to use SSG's Marks in its business operations, subject to certain conditions as detailed in the Agreement. *See* Ex. 1, at 4-6, 11-12.

58.    Smart Profitability made the $25,000 initial payment but failed to make all bonus payments as detailed above. Notably, Smart Profitability and Pala Group failed to make the Sales Bonus payment in November 2023. These payments, which Smart Profitability and Pala Group failed to make, were the contemplated cost of the license to use the Marks as set forth in the Agreement. As a result, Smart Profitability effectively terminated the Agreement, is using SSG's Marks without permission, and is thus infringing SSG's Marks. *See* Ex. 1, at 4-6, 11-12.

59.    Smart Profitability is therefore using SSG's Marks without permission and is infringing SSG's Marks.

60.    Following Carr's Hill's acquisition of Smart Profitability, Carr's Hill began to operate Smart Profitability.

61.    Carr's Hill now owns and operates Smart Profitability.

62.    Under Carr's Hill's ownership, Smart Profitability continues to use SSG's Marks without permission.

63.    Unauthorized use of SSG's Marks is detailed on Smart Profitability's website, www.smartsafetygulfcoast.com.

64. In addition, Defendant Smart Profitabily has sublicensed the Marks without SSG's authorization, as evidenced by the fact that numerous companies use the SSG Marks on their letterhead or on company forms.

65. For instance, Defendant Safety and Compliance Holdings, LLC uses the SSG Marks on its letterhead, including in letters sent to SSG.

66. Further, Defendant Solomon uses the SSG Marks on company forms given to Solomon by Smart Profitability for reporting accidents and for other compliance issues.

67. Defendants' unauthorized use of SSG's Marks as described above constitute infringement of SSG's Marks even if Smart Profitability and/or Pala Group had made all payments under the Agreement.

68. Specifically, Defendant's unauthorized use of SSG Marks constitutes infringement of SSG's Marks because Smart Profitability allows use of the Marks by unauthorized parties without the permission of SSG, as required by the Agreement.

69. Any use of the Marks which occurred after Smart Profitability's failure to make payments as outlined above was without authorization of SSG.

70. To this day, Defendants refuse to stop using the Marks.

**Trade Dress**

71. SSG is highly recognizable for its distinctive yellow and black branding associated with its Marks and website, www.smartsafetygroup.com, that set it apart from other safety and compliance companies:



72.     This branding extends to SSG's name, website, logo, Marks, banners, labeling, font, and marketing ("Trade Dress").

73.     SSG's Trade Dress is distinctive as it contains unique shapes, a large "A" in the name, the word "Smart" associated with Safety, and creates a commercial impression distinct from the accompanying words.

74.     For instance, the yellow and black colors associated with SSG's Trade Dress make it stand out amongst others in the market.

75.     SSG began using the Marks and Trade Dress in April 2005 and has expended substantial time, money, and resources to develop, promote, and maintain its branding, which includes the Marks and Trade Dress ("Branding").

76.     Defendant Smart Profitability competes in the same safety and compliance market, and has copied SSG's Branding and Trade Dress, as evidenced by their website, which is virtually identical to SSG's website.



77.    Defendants' copying of SSG's Branding and Marks has created confusion in the marketplace, as evidenced by the Lidback Lawsuit wherein SSG was incorrectly named as a defendant in place of Smart Profitability.

**Fraudulent Inducement**

78.    Robert Turner of Pala Group was the representative acting on Smart Profitability's behalf when the parties' Agreement was negotiated in 2011.

79.    Negotiations occurred during 2011 and until the Agreement was entered in late 2011 among the parties by way of phone, email and in-person.

80.    During negotiations and before the parties entered into the Agreement in late 2011, Robert Turner assured SSG and Mr. Hundley that all Mr. Hundley's consulting services and Smart Profitability's use of the Marks would be adequately and fairly compensated.

81.    The representations made by Robert Turner were false.

82.    Robert Turner knew these representations of these material payment terms were false when he made them to SSG and Mr. Hundley.

83.    Robert Turner intended that Mr. Hundley and SSG rely on the false representations in order to induce them into executing the Agreement with these false promises and false representations regarding the material payment terms.

84.    Mr. Hundley and SSG only entered into the Agreement due to Robert Turner's false representations concerning the material payment terms and Mr. Hundley and SSG relied on the false representations.

85.    SSG was harmed as a result of reliance on Robert Turner's false representations and this reliance was a substantial factor in causing harm to SSG.

86.    SSG was independently harmed by Robert Turner's deceit as described herein above, a harm which is distinct from SSG's monetary damages resulting from the breach of the Agreement and Smart Profitability's failure to pay all monies owed to SSG under it.

## FIRST CAUSE OF ACTION
### DECLARATORY RELIEF
### (Against All Defendants)

87.    SSG realleges and incorporates herein each and every allegation set forth above and as though set forth in full herein.

88.    An actual controversy has arisen and now exists between SSG and Smart Profitability concerning their respective rights and duties with respect to the Agreement.

89.    Smart Profitability contends, among other things, that they have fully performed under the terms of the Agreement and that they are entitled to use the Marks as detailed in the licensing terms of the Agreement.

90.    SSG disputes the above claim and specifically contends that Smart Profitability has breached the terms of the Agreement by failing to make its required payments as detailed above.

91.    Smart Profitability's, and all Defendants', past, ongoing and future use of the Marks is not authorized by SSG.

92.    Due to its material breach of the Agreement, Smart Profitability should not enjoy use of the Marks as it may have been entitled had it made all payments owed to SSG thereunder.

93.    Smart Profitability has and continues to also allow for unauthorized third party use of the Marks and Smart Profitability profits therefrom.

94.    SSG desires a judicial determination of the parties' respective rights and duties under the Agreement, and declaration from the Court that Smart Profitability had and has no rights to use the Marks due to its material breaches of the Agreement, starting in 2012 and which continue to this day.

95.    A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties can ascertain their respective rights and obligations under the Agreement.

## SECOND CAUSE OF ACTION

### BREACH OF WRITTEN CONTRACT

### (Against Smart Profitability and Pala Group)

96.    SSG realleges and incorporates herein each and every allegation set forth above and as though set forth in full herein.

97.    The parties have a written Agreement and that Agreement is attached as Exhibit 1.

98.    Smart Profitability and Pala Group have violated and breached the terms of the Agreement by, without limitation, their failure to make all required payments to SSG and by continuing to use SSG's Marks under a license which cost the total of all contemplated payments under the Agreement.

99.    SSG has performed all covenants and conditions precedent and concurrent on its part to be performed under the Agreement, except those which have been rendered impossible of performance by Smart Profitability, or otherwise waived or excused as a result of Smart Profitability's conduct.

100.   SSG has not waived any of its rights under the Agreement.

101.   As drafter of the Agreement, any interpretations of the Agreement should be made against Smart Profitability and Pala Group and in favor of SSG.

102.   As a proximate result of Smart Profitability's and Pala Group's breaches of the Agreement as detailed above, SSG has been damaged in an amount to be determined at trial in this matter.

### THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT

### (Against All Defendants)

103.   SSG realleges and incorporates herein each and every allegation set forth above and as though set forth in full herein.

104.   As set forth above, Smart Profitability failed to make required payments to SSG which were consideration for, among other things, Smart Profitability's license to use SSG's Marks in commerce.

105.   Defendants have received substantial benefit from its use of SSG's Marks, to include its own use under the Agreement and its financial benefit received from its facilitation of use of the Marks by third parties to whom Smart Profitability has contracted.

106.   It would be unjust, unfair and inequitable for Smart Profitability and Defendants to be permitted to retain those benefits.

107.   Accordingly, SSG seeks disgorgement and restitution of all such benefits, in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION

### INTENTIONAL MISREPRESENTATION

### (Against Smart Profitability and Pala Group)

108.   SSG realleges and incorporates herein each and every allegation set forth above and as though set forth in full herein.

17

109.   Robert Turner, on behalf of Smart Profitability and Pala Group made false representations to Mr. Hundley of SSG that Smart Profitability would make all payments required under the Agreement for consulting services and for payment of use of the Marks, payable at various times and characterized as Startup, Growth or Sales Bonuses under the Agreement.

110.   The false representations were made at various during negotiations of the terms of the Agreement during 2011.

111.   The false representations were made by email, phone and in-person discussion among the parties.

112.   Robert Turner knew the representations to be false when he made them to Mr. Hundley and SSG.

113.   Robert Turner intended that Mr. Hundley and SSG rely on the false representations.

114.   Mr. Hundley and SSG did rely on the false representations made by Robert Turner and that reliance was reasonable.

115.   SSG suffered harm following reliance on the false representations and that reliance is a substantial factor in SSG's damages, which are in amount to be determined at trial.

116.   SSG was damaged by way of being induced to contract and by way of Robert Turner's deceit and false promises.

## FIFTH CAUSE OF ACTION

### COMMON LAW TRADEMARK INFRINGEMENT

#### (Against All Defendants)

117.   SSG realleges and incorporates herein each and every allegation set forth above and as though set forth in full herein.

118.   This claim arises under the applicable common law relating to service mark infringement and unfair competition.

119.   SSG has the exclusive rights, title and interest in Marks as recognized by the parties and as set forth in particularity in defined terms of the Agreement and in the Agreement's Section 11.

120.   Smart Profitability's failure to make payments to SSG as provided by the Agreement and detailed above amount to Smart Profitability's breach of the Agreement and forfeiture of the license to use SSG's Marks as also set forth in the Agreement.

121.   Without authority to use SSG's Marks, Defendants' use thereof is an infringement of SSG's Marks.

122.   Smart Profitability has also sublicensed the Marks to numerous entities, including but not limited to Solomon, without SSG's required authorization.

123.   Defendants' unauthorized use of SSG's Marks also constitutes unfair competition.

124.   Defendants are causing and have caused confusion and mistake in the minds of the trade and the purchasing public as to the source of the infringing services, causing the public to believe Defendants' infringing services are authentic services of SSG when, in fact, they are not.

125.   By such actions in infringing the SSG's common law trademarks, Smart Profitability and all Defendants are improperly trading upon SSG's reputation and goodwill and is impairing SSG's valuable rights to the its Marks.

126.   Upon information and belief, Defendants' activities constitute willful and intentional acts of infringement of SSG's Marks and engaging in unfair competition in total disregard of SSG's proprietary rights, and were done despite Smart Profitability's knowledge that it had committed prior material breach of the parties' Agreement and that the use of the Marks, on their part or in facilitating any such use by unauthorized third

parties and profiting therefrom, or any reproduction, copy, or colorable imitation thereof was and is in direct contravention of SSG's rights.

127.    SSG has suffered damages and remains unpaid by Smart Profitability for the agreed upon cost of the license of the Marks under the Agreement, and Smart Profitability has earned profits in an amount to be proven at trial as the result of its aforesaid acts.

128.    As a direct and proximate cause of all of the conduct described above, SSG has been damaged in an amount to be determined at trial.

129.    Further, SSG has no adequate remedy at law concerning Defendants' direct and vicarious infringement described herein.

130.    Defendants' conduct has caused and, if not enjoined, will continue to cause, irreparable harm and damage to the rights of SSG, its Marks and to the business, reputation and goodwill of SSG.

131.    By reason of the forgoing, SSG is entitled to a temporary restraining order, as well as preliminary and permanent injunctive relief against Defendants, restraining any and all further acts of infringement.

## SIXTH CAUSE OF ACTION

**UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, PASSING OFF, AND FALSE ADVERTISING UNDER SECTION 43 (a) of LANHAM ACT**

**(Against All Defendants)**

132.    SSG realleges and incorporates herein each and every allegation set forth above and as though set forth in full herein.

133.    SSG is owner of the Marks.

134.    SSG has developed and maintained substantial secondary meaning in the Marks across the United States.

135.    As described herein, Smart Profitability failed to make payments under the parties' Agreement for SSG's consulting services and use of SSG's Marks.

136.  After Smart Profitability failed to make payments to SSG under the Agreement and with the intent and purpose of misleading the public, Defendants have used and continue to use SSG's Marks in the operation of what appears to the public as an authorized use of SSG's Marks.

137.  Defendants' unauthorized use of SSG's Marks is a false designation of origin and/or false representation, and constitutes the utilization of false descriptions and representations in interstate commerce because Defendants are falsely representing themselves to the public as SSG, or authorized users of the Marks.

138.  Defendants' use of the Marks is intended to capitalize on SSG's Marks and reputation in order to attract customers and increase goodwill.

139.  By engaging in the activities described above, Defendants have made and are making false, deceptive and misleading statements constituting false designation of origin, passing off, false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

140.  Defendants have caused and will continue to cause irreparable injury to SSG if not restrained by this Court.

141.  SSG has no adequate remedy at law, and therefore seeks injunctive relief under 15 U.S.C. § 1116.

142.  Defendants' acts of infringement of the SSG Marks has been and continues to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

143.  SSG is entitled to recover from Defendants allowed under 15 U.S.C. § 1117, including but not limited to compensatory damages suffered as a result of Defendants' acts of unfair competition, disgorgement of Defendants' profits, trebled profits or damages (whichever amount is greater), reasonable attorneys' fees, costs, and prejudgment interest.

## SEVENTH CAUSE OF ACTION

**UNFAIR COMPETITION UNDER BUS. & PROF. CODE §17200**

**(Against All Defendants)**

144.   SSG realleges and incorporates herein each and every allegation set forth above and as though set forth in full herein.

145.   Defendants' actions constitute unfair competition within the meaning of Cal. Bus. & Prof. Code, § 17200, et seq.

146.   Defendants' actions have caused and will likely to continue to cause confusion, mistake, and deception among consumers in the marketplace.

147.   Defendants' unfair competition has caused and will continue to cause damage to SSG, including irreparable harm for which there is no adequate remedy at law.

148.   Pursuant to Cal. Bus. & Prof. Code, § 17203, SSG is entitled to immediately restraining, preliminary and permanent injunctive relief ordering Defendants to cease this unfair competition.

149.   SSG is further entitled to the disgorgement of any and all of Defendants' profits associated with this unfair competition.

## EIGHTH CAUSE OF ACTION

**TRADE DRESS INFRINGEMENT UNDER SECTION 43(a) of LANHAM ACT**

**(Against All Defendants)**

150.   SSG realleges and incorporates herein each and every allegation set forth above and as though set forth in full herein.

151.   SSG'S Trade Dress is nonfunctional and has acquired secondary meaning among the general consuming public nationwide.

152.   Defendants are willfully, intentionally, and knowingly using a design and design elements that are identical to, substantially indistinguishable from, or likely to cause confusion with SSG's Trade Dress.

153.   Defendants' infringement of SSG's Trade Dress has actually caused confusion and deception to customers and potential customers of SSG and at least as to an

affiliation, connection, or association of SSG with Defendants, or as to the origin, sponsorship or approval of Defendants' goods, services and activities by Plaintiff.

154. Defendants' conduct constitutes trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125.

155. Defendants' conduct is causing irreparable harm an injury to SSG's reputation, goodwill, and Trade Dress, which injury will continue unabated unless enjoined by this Court.

156. In addition, Defendants' conduct is causing monetary damage to Plaintiff in an amount to be proven at trial.

## NINTH CAUSE OF ACTION

### COMMON LAW TRADE DRESS INFRINGEMENT

### (Against All Defendants)

157. SSG realleges and incorporates herein each and every allegation set forth above and as though set forth in full herein.

158. SSG'S Trade Dress is nonfunctional and has acquired secondary meaning among the general consuming public nationwide.

159. Defendants are willfully, intentionally, and knowingly using a design and design elements that are identical to, substantially indistinguishable from, or likely to cause confusion with SSG's Trade Dress.

160. Defendants' infringement of SSG's Trade Dress has actually caused confusion and deception to customers and potential customers of SSG and at least as to an affiliation, connection, or association of SSG with Defendants, or as to the origin, sponsorship or approval of Defendants' goods, services and activities by Plaintiff.

161. Defendants' conduct constitutes trade dress infringement in violation of California law.

162.   Defendants' conduct is causing irreparable harm an injury to SSG's reputation, goodwill, and Trade Dress, which injury will continue unabated unless enjoined by this Court.

163.   In addition, Defendants' conduct is causing monetary damage to Plaintiff in an amount to be proven at trial.

**TENTH CAUSE OF ACTION**

**INDEMNIFICATION**

**(Against Smart Profitability and Pala Group)**

164.   SSG realleges and incorporates herein each and every allegation set forth above and as though set forth in full herein.

165.   Under its Section 11(e)(ii) (see Exhibit 1), SSG's Agreement with Smart Profitability requires Smart Profitability to "…defend, indemnify and hold harmless" SSG from and against, among other things, "…any and all losses, liabilities, claims, demands, costs, obligations and expenses that…arise from (Smart Profitability's) use of the (SSG's) Marks."

166.   SSG has been named as a Defendant in the Lidback Lawsuit brought by Perry Lidback (and his wife) related to alleged negligence, among other claims, concerning an event held in Houston, Texas in early 2024 and during that city's hosting of the College Football National Championship and events related thereto.

167.   SSG itself did not use the Marks in connection with any work or other matter in or around this time or in this area.

168.   SSG is informed and believe and on that basis alleges that Smart Profitability was connected with this event in Houston, Texas, as this city is in the "Gulf" area and location where Smart Profitability would be likely to do its business.

169.    SSG is informed and believes and on that basis alleges that Smart Profitability and Solomon used SSG's Marks on this Houston, Texas project and therefore Smart Profitability is the proper defendant in that lawsuit.

170.    SSG requests that the Court order that Smart Profitability be required to indemnify SSG for any and all amounts owed from Smart Profitability to SSG under the Agreement.

171.    SSG has and will suffer damages due to Smart Profitability's and Pala Group's failure to indemnify SSG under the Agreement and said failure is the proximate cause of any such damages of SSG. SSG does not know the extent of its damages for which Smart Profitability would owe SSG, as the lawsuit in question is ongoing.

172.    SSG will present at trial proof of said damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, SSG respectfully demands the following relief against Smart Profitability

1.    That Defendants, their agents, franchisees, licensees, servants, representatives, employees, attorneys, successors and assigns, and all those in active concert or participation with any of them who receive notice of such judgment directly or otherwise, be permanently enjoined from infringing SSG's Marks, either directly or vicariously, whether or not registered, from falsely designating the origin, sponsorship of or affiliation of their business or services, from unfairly competing with SSG, from diluting the distinctive quality of the Marks and specifically:

(i)    Imitating, copying, using, reproducing, displaying, maintaining on an database or computer, or authorizing or permitting any third party to imitate copy, use, reproduce, display download by computer or maintain by computer or otherwise, the

Marks, or any copies, simulations, variations or colorable imitations thereof on or in connection with the offering of any goods or service associated with those of SSG;

(ii)    Using, authorizing, maintaining or making available for use or aiding in any way any third party to use or copy SSG's Marks;

(iii)    Using, any trademark, trade name, logo, business name, computer address or other identifier, or acting in any fashion, which may be calculated to falsely represent that the goods or services provided, promoted or offered by Smart Profitability are sponsored by, authorized by, licensed by, or in any other way associated with SSG;

(iv)    Aiding, assisting or abetting any other party in doing any act prohibited by any of the above sub-paragraphs; and

(v)    Committing any other act that falsely represents, or that has the effect of falsely representing, that the goods and services of Smart Profitability are licensed by, authorized by, offered by, produced by, sponsored by, or in any way associated or affiliated with SSG.

2.    Directing that Defendants file with the Court and serve upon SSG's counsel within thirty (30) days after entry of Judgment a report in writing under oath setting forth in detail the manner and form in which the Smart Profitability has complied with the requirements of the Injunction and Order.

3.    Directing that Defendants account for all gains, profits, and advantages derived from their acts of infringement;

4.    A judgment in SSG's favor declaring that SSG is the owner of the Marks and that Smart Profitability or any Defendant has a license or interest in the SSG Marks under the Agreement or otherwise.

5.    Directing such other relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any goods or services provided by or promoted by Defendants are authorized by SSG or related in any way to SSG, its products or their services.

6.     Awarding SSG: (i) All of Defendants' profits, gains and advantages derived from the unauthorized use of SSG's Marks or any imitation or simulation thereof; (ii) All damages sustained by SSG by reason of Defendants' acts of trademark infringement, dilution and unfair competition; (iii) Exemplary and punitive damages as the court finds appropriate to deter any future willful conduct; and (iv) Interest, including prejudgment interest, on the foregoing sums.

7.     Awarding SSG its attorney's fees and costs incurred by reason of Defendants' actions and being required to bring this suit to enforce its rights.

8.     Declaring that Smart Profitability committed prior material breach as it relates to the Agreement and SSG's performance thereof, and that Smart Profitability has no further rights to any license of SSG's Marks under the Agreement or otherwise.

9.     Damages for Smart Profitability's breaches of the Agreement, to include no less than all payments owed under the Agreement, as detailed herein above and as contemplated as consideration for use of the Marks;

10.     Any and all damages available to SSG under any and all claims brought herein under the Lanham Act, to include compensatory and/or statutory damages, treble damages and attorney's fees and costs;

11.     Order Smart Profitability to pay to SSG damages owed from Smart Profitability as and for Smart Profitability's failure to indemnify SSG pursuant to the parties; Agreement and caused by the lawsuit described in this Complaint and as requested above; and

12.     Directing such other relief as the Court may deem appropriate to prevent Defendants from participating in this or other trademark infringements, either directly or vicariously, and to prevent Defendants from engaging in unfair business practices and trademark dilution.

1

2

Dated: October 3, 2025

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,
**LEJEUNE LAW, P.C.**

By:    */s/* Cody R. LeJeune

Cody R. LeJeune
402 West Broadway, Suite 400
San Diego, CA 92101
Telephone: (985) 713-4964
Attorney for Plaintiff
SAFETY MANAGEMENT AND RELATED
TRAINING, INC. (D/B/A SMART SAFETY
GROUP)